**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| DALE BRANTLEY,<br><br>                    **Plaintiff,**<br><br>vs.<br><br>**WEST VALLEY CITY HOUSING AUTHORITY,**<br><br>                    **Defendant.** | **MEMORANDUM DECISION & ORDER**<br><br>Case No.  2:08CV573DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendant West Valley Housing Authority's Motion for Judgment on the Pleadings and Motion to Strike.  This court held a hearing on the motions on January 7, 2009.  At the hearing, Plaintiff was represented by Timothy J. Williams, and Defendant was represented by Robert Keller.  The court has carefully considered the pleadings and memoranda submitted by the parties as well as the law and facts relating to the motion.  Now being fully advised, the court renders the following Memorandum Decision and Order.

**BACKGROUND**

This matter arises from Defendant West Valley Housing Authority's decision to terminate Plaintiff Dale Brantley's Section 8 housing assistance under 42 U.S.C. Section 1437f. Plaintiff is 71-years old and began receiving housing assistance in the year 2000.  On April 25, 2007, Plaintiff was involved in an altercation with another resident.  Plaintiff's upstairs neighbor, Michael Kelly, came downstairs and confronted Plaintiff in an aggressive and threatening manner.  Kelly was intoxicated.  Plaintiff believed that the much larger, 27-year old Kelly posed

a serious risk of physical bodily injury or death to him.  Plaintiff told police that he got his gun to

protect himself.  Katherine Baltz, Kelly's live-in girlfriend, attempted to intervene in the

altercation and told police that Plaintiff's cat walked by his leg and seemed to startle him.  She

said that Plaintiff turned slightly and then the gun went off into the dirt by the door.  Baltz said

that she believed that the firing was unintentional.  Plaintiff also told police that the gun went off

by accident.  The police interviewed Kelly and the police report indicates that Kelly was quite

intoxicated.  The police, however, charged Plaintiff with two counts of aggravated assault.

Approximately two months after the incident, on June 19, 2007, Defendant sent

Plaintiff a notice of termination.  One of the requirements for receiving Section 8 housing

assistance is that the members of the household not engage in "violent criminal activity or other

criminal activity that threatens the health, safety, or right to peaceful enjoyment of other residents

and persons residing in the immediate vicinity of the premises."  24 C.F.R. § 982.551(l).

Plaintiff requested a hearing, which was held on July 2, 2007.

Mr. Brantley and his criminal defense attorney, Michael Jones, attended the

hearing on July 2, 2007.  They informed Defendant that the incident was a case of self-defense

and that West Valley City would drop the two pending felony charges for aggravated assault.

According to Jones, Lane Morris, on behalf of Defendant, stated at the hearing that if the

landlord was not taking any action against Plaintiff, then he would also recommend that no

action be taken against Plaintiff.  Based on the representations that the charges would be dropped

and pending information from the landlord, the hearing officer, Kim Guess, took no action at the

July 2, 2007 hearing.

Pursuant to HUD regulations, a written decision must be promptly provided to the

2

voucher holder.  Under Defendant's administrative plan, a hearing officer must issue a written decision within ten days after a hearing.  Hearing Officer Kim Guess did not issue a written decision based on the July 2, 2007 hearing until September 13, 2007.  In her September 13, 2007 decision, she ruled that based on information she had subsequently received from the Third District Court that Plaintiff was being formally charged, she was upholding termination of Plaintiff's voucher.

Plaintiff's attorney Michael Jones wrote a letter to Guess because the ruling was inconsistent with the discussions at the July 2, 2007 hearing.  Jones also asked for a formal hearing.  Defendant's attorney, Clair Gillmor with the West Valley City Attorney's office, sent a letter to Jones, dated October 8, 2007.  Gillmor's letter states that Guess's written decision was inappropriate.  Gillmor stated that Plaintiff's voucher did not terminate, and would not terminate until after Plaintiff had a hearing or waived his right to a hearing.

On November 8, 2007, Defendant sent Plaintiff a new termination notice.  The termination notice stated that Plaintiff's voucher was being terminated because of criminal activity:  "West Valley City Housing Authority has received information and court documentation that you have been charged and/or convicted with aggravated assault.  This activity is a violation of your family obligations."  Another termination notice was sent to Plaintiff stating that his hearing was being rescheduled for December 10, 2007.  The second notice repeated the same grounds for termination.

On November 20, 2007, Plaintiff's landlord wrote a letter about the incident between Plaintiff and Kelly.  Plaintiff's landlord stated that he had been told by Plaintiff's next door neighbor that Kelly and Plaintiff got into an argument about Kelly chasing Plaintiff's cat

3

and, as the argument heated up, Kelly came storming down the stairs in a threatening manner. The neighbor also stated that Kelly was drunk and being very aggressive toward Plaintiff.  The neighbor thought that Plaintiff needed to defend himself.  Based on the landlord's conversation with the neighbor and his conversation with Plaintiff, the landlord stated in his letter that he decided not to evict Plaintiff.

In a January 2, 2008 letter from Layne Morris to Michael Jones, Morris stated that the fact that Plaintiff was being charged with a felony demonstrated by a preponderance of the evidence that a violent crime had occurred and that was all that was needed to terminate assistance, not arrest or conviction.  He stated, therefore, the Defendant would seek to have Plaintiff's housing assistance terminated effective February 29, 2008.  He set a hearing for February 4, 2008.

The February 4, 2008 hearing was held and attended by Plaintiff, Morris, and Hearing Officer Guess.  Plaintiff was not represented by counsel at the hearing.  At the hearing, Defendant did not present any witnesses, exhibits, or other demonstrative evidence.  It did not read a witness statement or police report.  Morris presented Defendant's case and stated only that the felony charge constituted a preponderance of evidence of criminal activity.

Guess issued a written decision, dated February 19, 2008, consisting of six paragraphs.  Four paragraphs relate to the to the July 2, 2007 hearing and the last paragraph addresses the February 4, 2007 hearing.  The last paragraph contains two sentences: one identifying who attended the hearing, and one sentence stating that, based on the documentation and housing authority violations, it is her decision to uphold termination of housing assistance.

On February 25, 2008, Plaintiff entered into a diversion/plea agreement to a class

4

A misdemeanor.  That agreement resolved the criminal matter.

## DISCUSSION

### Defendant's Motion to Strike

Defendant's motion to strike was filed in connection with its Answer and seeks to strike the "introduction" section of Plaintiff's Verified Complaint.  Defendant contends that the "introduction" section fails to comport with Rule 10 of the Utah Rules of Civil Procedure, which provides that "all statements of claim or defense shall be made in numbered paragraphs."  While Rule 10 may require the paragraphs of a Complaint to be numbered, the court finds no prejudice in the inclusion of an introduction as part of Plaintiff's Verified Complaint.  Accordingly, the court finds no basis for striking the introduction section of Plaintiff's Verified Complaint and denies Defendant's motion to strike.

### Defendant's Motion for Judgment on the Pleadings

Defendant argues that Plaintiff's due process claim fails because, as a matter of law, Plaintiff was afforded sufficient due process in the termination of his housing assistance.  Specifically, Defendant contends that its three termination notice letters and two hearings were sufficient under due process standards.  Plaintiff argues that accepting all of the facts alleged in his Complaint as true demonstrates that Defendant is not entitled to judgment as a matter of law.

The application of the due process clause to a denial of public assistance benefits was set forth in *Goldberg v. Kelly*, 397 U.S. 254 (1970).  The Court held that welfare recipients have a property interest in continued benefits and that procedural due process requirements must be applied before those benefits may be terminated.  397 U.S. at 269-70.  Courts have recognized that *Goldberg*'s principles apply to subsidized housing benefits.  *Ferguson v. Metropolitan*

*Development and Housing Agency*, 485 F. Supp. 517, 521 (M.D. Tenn. 1980) ("It is similarly undisputed that denial of benefits by local administrators of federal housing programs, like denial of other forms of public assistance, is a denial of an interest protected by the Fourteenth Amendment and therefore falls within the *Goldberg* analysis."); *Caulder v. Durham Housing Authority*, 433 F.2d 998, 1003-04 (4th Cir. 1970); and *Escalera v. New York Housing Authority*, 425 F.2d 853, 861 (2d Cir. 1970).

The federal regulations governing the termination of Section 8 housing assistance specify the procedures to be followed, including notice and the requirements for the informal review process. 24 C.F.R. § 982.555. The notice must be given to the recipient, provide a brief statement of reasons for the decision, and advise the recipient of a right to request an informal hearing on the decision. *Id.*

In *Goldberg*, the court stated that "[t]he hearing must be at a meaningful time and in a meaningful manner." 397 U.S. at 267. In detailing the manner of the hearing, the court stated that the recipient was entitled to "confront any adverse witnesses" and present "his own arguments and evidence orally." *Id.* The court recognized that "[t]hese rights are important in cases such as those before us, where recipients have challenged proposed terminations as resting on incorrect or misleading factual premises or on misapplication of rules or polices to the facts of the particular cases." *Id.* at 267-68.

The administrative regulations also provide that the recipient must be given the opportunity to present evidence, question any witness, and that the evidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings. 24 C.F.R. § 982.555(c)(5). The person conducting the hearing "must issue a written decision stating

6

briefly the reasons for the decision.  Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing."  *Id.* § 982.555(c)(6).

Defendant asserts that it provided Plaintiff with multiple notices, all of which made it clear that the primary reason for the termination decision was his discharge of a weapon. Plaintiff does not dispute that a recipient's right to continued assistance is conditioned upon those conditions recognized by Congress, such as violent criminal activity.  However, *Goldberg*'s safeguards apply when a recipient is notified of a termination of benefits based on criminal activity.  Defendant takes the position in this litigation that it terminated Plaintiff's assistance because he violated an ordinance for discharging a gun.  But the termination notice did not state such a charge.

Several courts have found notices to be a violation of due process where they did not provide a factual statement of the incident which constituted the grievance.  "A notice that merely parrots the broad language of the regulations is insufficient."  *Edgecomb v. Housing Authority of the Town of Vernon*, 824 F. Supp. 312, 315 (D. Conn. 1993).  The court stated that a termination notice compliant with *Goldberg* would state the particular felony, the person who allegedly committed it, and a brief factual statement concerning the incident.  *Id.*  This would impose no significant burden on the housing authority, while the additional safeguards would reduce the risk of an erroneous deprivation of benefits.  *Id.*

In *Driver v. Housing Authority of Racine County*, 713 N.W.2d 670, 678 (Wis. App. 2006), the court held that "public policy mandates strict compliance regarding the written notice requirement.  Due process imposes the burden of providing adequate notice on the

7

government, not on the individual." *Id.*

Factually, Defendant's notices stated that the reason for termination was that Plaintiff had been "charged and/or convicted with aggravated assault." The plain language of its notices do not give the reason for termination as discharging a gun in city limits. Plaintiff was not charged with a violation of that ordinance, nor was that alleged criminal activity ever specifically addressed in the hearing or decision to uphold termination.

Based on the facts before the court on this motion, Defendant did not give Plaintiff a chance to defend against an ordinance violation for discharging a gun in city limits. Plaintiff only provided a self-defense defense against the aggravated assault charge. Plaintiff was not provided with notice that he needed to defend against accidentally discharging the gun, nor was that basis ever discussed in the February 4, 2008 hearing. Under due process standards, Defendant cannot change its basis for termination from being charged with aggravated assault to discharging a gun in city limits.

In addition, the mere fact that Defendant sent multiple notices and held two hearings does not constitute compliance with due process standards as a matter of law. Accepting Plaintiff's facts as true for purposes of this motion, all of the parties agreed at the July 2, 2007 hearing that no action would be taken. A city attorney acknowledged that the hearing officer issued an erroneous decision and stated that the process would begin anew. The fact that Defendant issued inappropriate notices and incorrect decisions does not demonstrate due process.

Furthermore, Plaintiff argues that the hearing officer's written decision does not comport with the due process requirements as it did not state the evidence presented at the hearing upon which her decision was based. The only written decision is the February 19, 2008

8

decision as the prior decision was rescinded by the city.  Defendant argues that the February

decision must be considered in connection with the July and February hearings, but there is no

transcript or other evidence of what was presented to the hearing officer at the July hearing.  The

fact that there is no transcript of the hearing also appears to be in violation of the regulations.

Viewing the February decision itself for compliance with due process, the court

concludes that based on the allegations in the Verified Complaint the decision does not appear to

meet due process requirements set forth in the governing regulations.   "The statement of

decision required by the regulation must be truly informative as to the reasons for the decision.

This would include a short statement of the elements of fact or law on which the decision is

actually based.  A bare and conclusory statement of the hearing decision, that does not let the

participant know the basic reasons for the decision, will not satisfy the regulatory requirement."

49 Fed. Reg. 62 at 12,230 (March 29, 1984).

Holding that the written decision provided to the recipient in *Driver* fell

"appallingly short of the mark," the court found that the written decision contained no facts

related to the incidents giving rise to the termination decisions; did not mention any specific

evidence the hearing officers relied on; did not state the elements of law motivating the court's

conclusion; cited no policy, regulation, or other authority indicating what a family obligation is

or how the plaintiff's acts or omissions failed to meet the pertinent legal requirements.  *Driver v.*

*Housing Authority of Racine County*, 713 N.W.2d 670, 678 (Wis. App. 2006)

Similarly, in *Costa*, the court found a written decision deficient because it merely

referred to a police report and newspaper article and contained no reference to legal standards or

to the information submitted by the recipient.  881 N.E.2d at 810.  Also, in *Edgecomb*, the court

9

found that a hearing officers statement that there was a preponderance of the evidence of criminal

activity was conclusory and had to be considered insufficient.  824 F. Supp. at 316.  The court

added that the decision "did not state the elements of fact or law on which the decision to uphold

termination of assistance was based.  Nor did the hearing officer specify the reasons for her

determination or indicate the evidence on which it rested."  *Id.*

Similarly, the written decision in this case appears to fall short of due process

standards.  The decision makes a reference to documentation, but does not identify anything in

particular.  There is no application of the facts or mention of Plaintiff's arguments.  The hearing

officer provides only a conclusory statement of the decision with no reasons to support it.

Moreover, based on the facts before this court, Defendant presented little, if any, evidence at the

hearing.  Defendant relied on its position that the state criminal proceedings met the

preponderance of the evidence requirement.  Defendant did not state what the evidence was, what

the police reports stated, or what witnesses stated.  Defendant and the hearing officer only

acknowledged that there were criminal charges pending against Plaintiff.  Defendant's Director

stated that he was "comfortable" that a crime occurred, Plaintiff was charged, will be convicted,

and -- it's simply a formality from here on out. . . . And if that doesn't happen, then -- then you

have some decisions to make."  The Director, however, did not provide any evidence

demonstrating why he was "comfortable" that Plaintiff would be convicted, not even hearsay

statements from a prosecutor or a statement that he had spoken to a prosecutor on the case.  The

hearing officer relies only on these conclusory statements as the basis for her decision.

The court concludes that judgment as a matter of law in favor of Defendant at this

stage of the litigation would be wholly inappropriate.  There are far too many factual questions

10

relevant to whether Defendant provided Plaintiff with due process in its termination of Plaintiff's housing benefits.  In addition, based on the facts as pled in Plaintiff's Verified Complaint, the court believes that Plaintiff has alleged numerous due process violations.  Accordingly, Defendant's Motion for Judgment on the Pleadings is denied.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Strike is DENIED and Defendant's Motion for Judgment on the Pleadings is DENIED.

DATED this 4th day of February, 2009.

BY THE COURT:

DALE A. KIMBALL
United States District Judge

11